PETER L. KAUFMAN, California State Bar No. 269297
  *kaufman@psblaw.com*
PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone: 310.477.1700
Facsimile: 310.477.1699

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LLOYD PARSONS,<br><br>  Plaintiff,<br><br>v.<br><br>SYNGENTA CROP PROTECTION LLC, SYNGENTA AG, and CHEVRON U.S.A., INC.,<br><br>  Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

Plaintiff LLOYD PARSONS, brings this Complaint against Defendants, Syngenta Crop Protection LLC, Syngenta AG, and Chevron U.S.A., Inc., and alleges as follows:

## I.    Summary of the case

1.    The manufacturers and sellers of paraquat deliberately concealed the dangers of paraquat for at least four decades, hid evidence of its dangers from government safety agencies, and knowingly unleased a product they knew caused Parkinson's Disease on the public.

2.    Paraquat is a synthetic chemical compound[1] that since the mid 1960s has been developed, registered, manufactured, distributed, sold for use, and used as an active ingredient in

---

[1] Paraquat dichloride (EPA Pesticide Chemical Code 061601) or paraquat methosulfate (EPA Pesticide Chemical Code

herbicide products ("paraquat products") developed, registered, formulated, distributed, and sold for use in the United States ("U.S."), including the State of Oregon ("Oregon").

3.      From approximately May 1964 through approximately June 1981, Imperial Chemical Industries Limited ("ICI Limited") and certain ICI Limited subsidiaries[2], and from approximately June 1981 through approximately September 1986, Imperial Chemical Industries PLC ("ICI PLC") and certain ICI PLC subsidiaries, each of which was a predecessor[3] of Defendants SYNGENTA AG ("SAG") and/or Defendants SYNGENTA CROP PROTECTION LLC ("SCPLLC"), were engaged, directly, acting in concert with each other, and/or acting in concert with Chevron Chemical Company, previously known as California Chemical Company ("CHEVRON"), in the business of developing, registering, manufacturing, distributing, and selling paraquat for use as an active ingredient in paraquat products, and developing, registering, formulating, and distributing paraquat products, for sale and use in the U.S., including Oregon ("the U.S. paraquat business").

4.      From approximately May 1964 through approximately September 1986, CHEVRON, a predecessor of Defendants CHEVRON U.S.A., INC. ("CUSA"), was engaged, directly and/or acting in concert with ICI[4], in all aspects of the U.S. paraquat business.

5.      Between approximately May 1964 and approximately September 1986, ICI manufactured and sold to CHEVRON paraquat ("ICI CHEVRON paraquat") for use by CHEVRON, and others to which CHEVRON distributed it, as an active ingredient in paraquat

---

061602).

[2] As used in this Complaint, "subsidiary" means a corporation or other business entity's wholly owned subsidiary that is or formerly was engaged in the U.S. paraquat business directly or acting in concert with others.

[3] As used in this Complaint, "predecessor" means a corporation or other business entity or subsidiary thereof, to which a Defendants is a successor by merger, continuation of business, or assumption of liabilities, that formerly was engaged in the U.S. paraquat business directly or acting in concert with others.

[4] As used in this Complaint, "ICI" means ICI Limited and various ICI Limited subsidiaries through approximately June 1981 and ICI PLC and various ICI PLC subsidiaries thereafter.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

products that CHEVRON and others formulated and distributed for sale and use in the U.S., including Oregon ("ICI   CHEVRON paraquat products").

6.      From approximately September 1986 through the present, ICI PLC and certain ICI PLC subsidiaries (including predecessors of SCPLLC) initially, then other SAG predecessors and certain subsidiaries of each (including predecessors of SCPLLC),and most recently SAG and certain SAG subsidiaries (including SCPLLC), have been engaged, directly and/or acting in concert with each other, in all aspects of the U.S. paraquat business.

7.      From approximately September 1986 through the present, ICI PLC and certain ICI PLC subsidiaries (including predecessors of SCPLLC) initially, then other SAG predecessors and certain subsidiaries of each (including predecessors of SCPLLC),and most recently SAG and certain SAG subsidiaries (including SCPLLC), have manufactured paraquat ("ICI   SYNGENTA paraquat") for their own use, and for use by others to which they distributed it, as an active ingredient in paraquat products that SCPLLC and its predecessors and others have distributed for sale and use in the U.S., including Oregon ("ICI   SYNGENTA paraquat products").

8.      Upon information and belief, Plaintiff Lloyd Parsons was exposed to Defendants' paraquat products in Oregon.

9.      Upon information and belief, Plaintiff Lloyd Parsons was exposed to Defendants' paraquat products while working on farms regularly and frequently over a period of many years.

10.     Today, Plaintiff Lloyd Parsons suffers from Parkinson's disease caused by many years of regular, frequent, prolonged exposure to paraquat from Defendants' paraquat products.

11.     Plaintiff bring this case to recover from Defendants, under the following theories of liability, compensation for injuries and damages caused by the exposure of Plaintiff Lloyd Parsons to paraquat from Defendants' paraquat products, plus costs of suit: strict product liability—design

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

defect; strict product liability—failure to warn; negligence and willful and wanton conduct; public nuisance; violation of the Oregon Unlawful Trade Practices Act California Consumer Legal Remedies Act; and breach of the implied warranty of merchantability. Plaintiff also seek punitive damages under Oregon common law and punitive damages and reasonable attorney's fees under the Oregon Unlawful Trade Practices Act and the California Consumer Legal Remedies Act.

12.      All allegations contained herein are based upon information and belief and to the best of Plaintiff's knowledge given the information currently in Plaintiff's possession. Plaintiff reserves the right to amend all allegations upon continued information becoming available by discovery or otherwise.

## II.      Parties

### A.      Plaintiff

13.      Plaintiff Lloyd Parsons is a citizen of the state of Oregon. Plaintiff resides at 1600 Rhododendron Dr., #46, Florence, Oregon 97439.

14.      Plaintiff Lloyd Parsons was exposed to Defendants' paraquat products while working on various farms in Tangent, Oregon.

15.      Upon information and belief, from 1968 to 2018, Plaintiff Lloyd Parsons was repeatedly exposed to and inhaled, ingested, and absorbed paraquat while he was mixing, loading, and, spraying Defendants' paraquat products and while he was in fields after they were sprayed.

16.      Upon information and belief, each exposure of Plaintiff Lloyd Parsons to paraquat from Defendants' paraquat products caused or contributed to cause Plaintiff Lloyd Parsons to develop Parkinson's disease, with which he was diagnosed on March 4, 2021 when he was 67 years of age, by initiating a decades  long process in which oxidation and oxidative stress, created or aggravated by the ongoing redox cycling of paraquat, damaged and interfered with essential functions

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

of dopaminergic neurons in his SNpc, resulting in the ongoing degeneration and death, as time passed, of progressively more dopaminergic neurons.

17.     Upon information and belief, Plaintiff Lloyd Parsons was exposed to paraquat in Defendants' paraquat products purchased by, among others, Plaintiff Lloyd Parson's employer.

18.     Defendants and those with whom they were acting in concert manufactured and distributed the paraquat that was used in formulating Defendants' paraquat products and to which Plaintiff Lloyd Parsons was exposed, loaded, and distributed Defendants' paraquat products that contained the paraquat to which Plaintiff Lloyd Parsons was exposed, intending or expecting that these products would be sold and used in the State of Oregon.

19.     When Plaintiff Lloyd Parsons was exposed to paraquat, he neither knew nor could have expected that paraquat was neurotoxic or that exposure to it could cause any neurological injury or neurodegenerative disease.

20.     When Plaintiff Lloyd Parsons was exposed to paraquat, he neither knew nor could have expected that wearing gloves, a mask, or other personal protective equipment or taking any other precautions might have prevented or reduced the risk of a neurological injury or neurodegenerative disease caused by exposure to paraquat.

21.     Plaintiff Lloyd Parsons only recently, within two years of this Complaint being filed, learned that paraquat caused his injuries. Prior to this, he did not have knowledge of any facts that would have put him on notice that his Parkinson's Disease was due to Defendants' product nor has there been widespread media coverage that put him on notice.

22.     Plaintiff did not know and was unable to learn of the connection between Defendants' product and his injuries due to the concealment of the information by Defendants and its ongoing

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

campaign stating there is no connection between paraquat and Parkinson's Disease. *See* *www.paraquat.com*.

### B. Defendants

23.    SCPLLC is a Delaware limited liability company with its principal place of business in Greensboro, North Carolina. SCPLLC is a wholly   owned subsidiary of Defendants SAG.

24.    SAG is a foreign corporation with its principal place of business in Basel,Switzerland.

25.    CUSA is a Pennsylvania corporation with its principal place of business in San Ramon, California.

## III.    Subject matter jurisdiction

26.    This Court has subject matter jurisdiction over this action because diversity jurisdiction exists under 28 U.S.C. § 1332(a)(3).

27.    The matter in controversy exceeds the sum or value of $75,000, exclusive of  interest and costs, because Plaintiff seeks an amount that exceeds this sum or value on each of his or her claims against each Defendant.

28.    Complete diversity exists because this is an action between citizens of different states in which a citizen or subject of a foreign state is an additional party, inthat:

    a.  Plaintiff Lloyd Parsons is a citizen of the State of Oregon;

    b.  SCPLLC is a citizen of the States of Delaware and North Carolina;

    c.  CUSA is a citizen of the States of Pennsylvania and California; and

    d.  SAG is a citizen or subject of the nation of Switzerland.

## IV.    Personal jurisdiction

6
COMPLAINT

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

29.     This Court has personal jurisdiction over each of the Defendants in this diversity case because a state court in the State of California would have such jurisdiction under Cal. Code Civ. Proc. § 410.10, in that:

    a.  Over a period of two (Chevron) to six (Syngenta) decades, each Defendants and/or its predecessor(s), together with those with whom they were acting in concert, manufactured paraquat for use as an active ingredient in paraquat products, distributed paraquat to formulators of paraquat products, formulated paraquat products, marketed paraquat products to the California agricultural community, and/or distributed paraquat products, intending that such products regularly would be, and knowing they regularly were, sold and used in the State of California;

    b.  Plaintiff' claims against each Defendants arise out of these contacts between the Defendants and/or its predecessor(s), together with those with whom they were acting in concert, with the State of California; and

    c.  These contacts between each Defendants and/or its predecessors, together with those with whom they were acting in concert, and the State of California, were so regular, frequent, and sustained as to provide fair warning that it might be hauled into court there, such that requiring it to defend this action in the State of California does not offend traditional notions of fair play and substantial justice.

## V.     Venue

30.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district, in that Plaintiff' claims arise from injuries caused by the exposure of Plaintiff Lloyd Parsons to paraquat from paraquat products that were controlled, managed, marketed, developed as described below from this District.

## VI.    Allegations common to all causes of action

### A.  Defendants and their predecessors

#### 1.      Syngenta Crop Protection LLC and Syngenta AG

31.     SAG is the successor in interest to the crop  protection business of each of its predecessors, AstraZeneca PLC ("AstraZeneca"), Zeneca Group PLC ("Zeneca Group"), ICI PLC,

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

ICI Limited, and Plant Protection Limited ("PP Limited") and their respective crop protection subsidiaries (collectively, "SAG's predecessors"), in that:

    a.   SAG, and each of SAG's predecessors, was the result of a corporate name change by, de facto consolidation or merger of, or mere continuation of, its immediate predecessor(s); and/or

    b.   SAG has expressly or impliedly agreed to assume any liability on claims arising from the historical operation of the crop protection business of each of SAG's predecessors

32.    SCPLLC is the successor in interest to the crop protection business of each of its predecessors, Syngenta Crop Protection, Inc. ("SCPI"), Zeneca Ag Products, Inc. ("Zeneca Ag"), Zeneca, Inc. ("Zeneca"), ICI Americas, Inc. ("ICIA"), ICI United States, Inc. ("ICI US"), and ICI America Inc. ("ICI America") (collectively, "SCPLLC's predecessors"), in that:

    a.   SCPLLC, and each of SCPLLC's predecessors, was the result of a corporate name change by, de facto consolidation or merger of, or mere continuation of, its immediate predecessor(s); and/or

    b.   SCPLLC has expressly or impliedly agreed to assume any liability on claims arising from the historical operation of the crop protection business of each of SCPLLC's predecessors.

33.    At all relevant times, SCPLLC, SCPI, Zeneca Ag, Zeneca, ICIA, ICI US, and/or ICI America was a wholly owned U.S. crop protection subsidiary of SAG or a predecessor of SAG.

34.    At all relevant times, PP Limited was a wholly owned U.K. crop protection subsidiary of ICI Limited, an unincorporated division of ICI Limited, or an unincorporated division of ICI PLC.

35.    At all relevant times, SAG and its predecessors exercised a degree of control over their crop protection subsidiaries so unusually high that these subsidiaries were their agents or alter egos.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

### 2.    Chevron U.S.A., Inc.

36.    CUSA is the successor in interest to CHEVRON's crop   protection business, in that it has expressly assumed any liability on claims arising from the historical operation of that business.

**B.   Defendants' and their predecessors' involvement in the U.S. paraquat business**

37.    ICI Limited discovered the herbicidal properties of paraquat in the mid    1950s; developed herbicide formulations containing paraquat as an active ingredient in the early 1960s; and produced the first commercial paraquat formulation, which it registered it in England and introduced in certain markets under the brand name GRAMOXONE®, in 1962.

38.    ICI Limited was awarded a U.S. patent on herbicide formulations containing paraquat as an active ingredient in 1962.

39.    In May 1964, ICI Limited, PP Limited, and CHEVRON entered into an agreement for the distribution of paraquat in the U.S. and the licensing of certain paraquat   related patents, trade secrets, and other intellectual property ("paraquat licensing and distribution agreement").

40.    As a result of the May 1964 paraquat licensing and distribution agreement, paraquat became commercially available for use in the U.S. in or about 1965.

41.    In April 1975, ICI Limited, ICI US, and CHEVRON entered into a new paraquat licensing and distribution agreement that superseded the May 1964 agreement.

42.    In November 1981, ICIA, CHEVRON, and ICI PLC entered into a new paraquat licensing and distribution agreement, effective January 1982, which superseded in part and amended in part the April 1975 agreement.

43.     From approximately May 1964 through approximately September 1986, pursuant to these paraquat licensing and distribution agreements, ICI and CHEVRON acted in concert in all aspects of the U.S. paraquat business.

44.     In September 1986, ICI and CHEVRON entered into an agreement terminating their paraquat licensing and distribution agreement.

45.     Under the September 1986 termination agreement, ICI paid CHEVRON for the early termination of CHEVRON's rights under their paraquat licensing and distribution agreement.

46.     Although the September 1986 termination agreement gave ICI the right to buy, or exchange for ICI labeled paraquat products, CHEVRON labeled paraquat products that CHEVRON had already sold to its distributors, CHEVRON  labeled paraquat products continued to be sold for use in the U.S. after this agreement for some period of time unknown to Plaintiff.

47.     SAG, SAG's predecessors, and subsidiaries of SAG and its predecessors (collectively, "SYNGENTA"), have at all relevant times manufactured more paraquat used as an active ingredient in paraquat products formulated and distributed for sale and use in the U.S., including Oregon, than all other paraquat manufacturers combined.

48.     From the mid  1960s through at least 1986, SYNGENTA (as ICI) was the only manufacturer of paraquat used as an active ingredient in paraquat products formulated and distributed for sale and use in the U.S., including Oregon.

49.     From approximately September 1986 through the present, SYNGENTA has:

a.  manufactured paraquat for use as an active ingredient in paraquat products formulated and distributed for sale and use in the U.S., including Oregon;

b.  distributed paraquat for use as an active ingredient in paraquat products formulated and distributed for sale and use in the U.S., including Oregon;

c.  formulated paraquat products distributed for sale and use in the U.S., including Oregon; and

10
COMPLAINT

d.   distributed paraquat products for sale and use in the U.S., including Oregon.

### C.  The use of paraquat products and Defendants' knowledge thereof

50.   Defendants' paraquat products have been used in the U.S. to kill broadleafweeds and grasses before the planting or emergence of more than 100 field, fruit, vegetable, and plantation crops, to control weeds in orchards, and to desiccate (dry) plants before harvest. At all relevant times, the use of Defendants' paraquat products for these purposes was intended or directed by or reasonably foreseeable to, and wasknown to or foreseen by, SYNGENTA and CHEVRON.

51.   Defendants' paraquat products were commonly used multiple times per year on the same ground, particularly when used to control weeds in orchards and in farm fields where multiple crops are planted in the same growing season or year. At all relevant times, the use of Defendants' paraquat products in this manner was intended or directed by or reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON.

52.   Defendants' paraquat products were typically sold to end users in the form of liquid concentrates that were then diluted with water in the tank of a sprayer and applied by spraying the diluted product onto target weeds. At all relevant times, the use of Defendants' paraquat products in this manner was intended or directed by or reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON.

53.   Defendants' paraquat products were typically formulated with a surfactant or surfactants, and/or a surfactant, surfactant product, or "crop oil," which typically contains one or more surfactants, was commonly added by users of Defendants' products, to increase the ability of paraquat to stay in contact with and penetrate the leaves of target plants and enter plant cells. At all

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

relevant times, the use of Defendants' paraquat products as so formulated and/or with such substances added was intended or directed by or reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON.

54.    Knapsack sprayers, hand held sprayers, aircraft (i.e., crop dusters), trucks with attached pressurized tanks, and tractor drawn pressurized tanks, were commonly used to apply Defendants' paraquat products. At all relevant times, the use of such equipment for that purpose was intended or directed by or reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON.

### D.  Exposure to paraquat and Defendants' knowledge thereof

55.    When Defendants' paraquat products were used in a manner that was intended and directed by or reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON, persons who used them and others nearby were commonly exposed to paraquat while it was being mixed and loaded into the tanks of sprayers, including as a result of spills, splashes, and leaks. At all relevant times, it was reasonably foreseeable to, and known to or foreseen by, SYNGENTA and CHEVRON that such exposure commonly would and did occur and would and did create a substantial risk of harm to the persons exposed.

56.    When Defendants' paraquat products were used in a manner that was intended and directed by or reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON, persons who sprayed them, and others nearby while they were being sprayed or when they recently had been sprayed, commonly were exposed to paraquat, including as a result of spray drift (the movement of herbicide spray droplets from the target area to an area where herbicide application was not intended, typically by wind), contact with sprayed plants and being exposed by paraquat that was absorbed into the soil and ground water and wells. At all relevant times, it was

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

reasonably foreseeable to, and known to or foreseen by, SYNGENTA and CHEVRON, that such exposure commonly would and did occur and would and did create a substantial risk of harm to the persons exposed.

57.    When Defendants' paraquat products were used in a manner that was intended and directed by or reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON, persons who used them and other persons nearby commonly were exposed to paraquat, including as a result of spills, splashes, and leaks, while equipment used to spray it was being emptied or cleaned or clogged spray nozzles, lines, or valves were being cleared. At all relevant times, it was reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON that such exposure commonly would and did occur and would and did create a substantial risk of harm to the persons exposed.

58.    At all relevant times, it was reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON that when Defendants' paraquat products were used in a manner that was intended and directed by or reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON, and people were exposed to paraquat as a result, paraquat could and did enter the human body via absorption through or penetration of the skin, mucous membranes, and other epithelial tissues, including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage was present, and that paraquat that entered the human body in one or more of these ways would and did create a substantial risk of harm to people so exposed.

59.    At all relevant times, it was reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON that when Defendants' paraquat products were used in a manner that was intended and directed by or reasonably foreseeable to, and was known to or foreseen by,

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

SYNGENTA and CHEVRON, and people were exposed to paraquat as a result, paraquat could and did enter the human body via respiration into the lungs, including the deep parts of the lungs where respiration (gas exchange) occurs, and that paraquat that entered the human body in this way would and did create a substantial risk of harm to people so exposed.

60.     At all relevant times, it was reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON that when Defendants' paraquat products were used in a manner that was intended and directed by or reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON, and people were exposed to paraquat as a result, paraquat could and did enter the human body via ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways, and that paraquat that entered the human body in this way would and did create a substantial risk of harm to people so exposed.

61.     At all relevant times, it was reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON that when Defendants' paraquat products were used in a manner that was intended and directed by or reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON, and people were exposed to paraquat as a result, paraquat that entered the human body via ingestion into the digestive tract could and did enter the enteric nervous system (the part of the nervous system that governs the function of the gastrointestinal tract), and that paraquat that entered the enteric nervous system would and did create a substantial risk of harm to people so exposed.

62.     At all relevant times, it was reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON that when Defendants' paraquat products were used in a manner that was intended and directed by or reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON, and people were exposed to paraquat as a result, paraquat that entered

the human body, whether via absorption, respiration, or ingestion, could and did enter the bloodstream, and that paraquat that entered the bloodstream would and did create a substantial risk of harm to people so exposed.

63.    At all relevant times, it was reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON that when Defendants' paraquat products were used in a manner that was intended and directed by or reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON, and people were exposed to paraquat as a result, paraquat that entered the bloodstream could and did enter the brain, whether through the blood  brain barrier or parts of the brain not protected by the blood  brain barrier, and that paraquat that entered the brain would and did create a substantial risk of harm to people so exposed.

64.    At all relevant times, it was reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON that when Defendants' paraquat products were used in a manner that was intended and directed by or reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON, and people were exposed to paraquat as a result, paraquat that entered the nose and nasal passages could and did enter the brain through the olfactory bulb (a part of the brain involved in the sense of smell), which is not protected by the blood  brain barrier, and that paraquat that entered the olfactory bulb would and did create a substantial risk of harm to people so exposed.

65.    At all relevant times, it was reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON that when Defendants' paraquat products were used in a manner that was intended and directed by or reasonably foreseeable to, and was known to or foreseen by, SYNGENTA and CHEVRON, and people were exposed to paraquat products that contained surfactants or had surfactants added to them, the surfactants would and did increase the toxicity of

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

paraquat toxicity to humans by increasing its ability to stay in contact with or penetrate cells and cellular structures, including but not limited to the skin, mucous membranes, and other epithelial and endothelial tissues, including tissues of the mouth, nose and nasal passages, trachea, conducting airways, lungs, gastrointestinal tract, blood   brain barrier, and neurons, and that this would and did increase the already substantial risk of harm to people so exposed.

### E.  Parkinson's disease

66.    Parkinson's disease is a progressive neurodegenerative disorder of the brain that affects primarily the motor system, the part of the central nervous system that controls movement.

67.    The characteristic symptoms of Parkinson's disease are its "primary" motor symptoms: resting tremor (shaking movement when the muscles are relaxed), bradykinesia (slowness in voluntary movement and reflexes), rigidity (stiffness and resistance to passive movement), and postural instability (impaired balance).

68.    Parkinson's disease's primary motor symptoms often result in "secondary" motor symptoms such as freezing of gait; shrinking handwriting; mask   like expression; slurred, monotonous, quiet voice; stooped posture; muscle spasms; impaired coordination; difficulty swallowing; and excess saliva and drooling caused by reduced swallowing movements.

69.    Non   motor symptoms—such as loss of or altered sense of smell; constipation; low blood pressure on rising to stand; sleep disturbances; and depression—are present in most cases of Parkinson's disease, often for years before any of the primary motor symptoms appear.

70.    There is currently no cure for Parkinson's disease; no treatment will stop or reverse its progression, and the treatments most commonly prescribed for its motor symptoms tend to become progressively less effective, and to cause unwelcome side effects, the longer they are used.

Panish Shea & Boyle LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

71.     The selective degeneration and death of dopaminergic neurons (dopamine producing nerve cells) in a part of the brain called the substantia nigra pars compacta ("SNpc") is one of the primary pathophysiological hallmarks of Parkinson's disease.

72.     Dopamine is a neurotransmitter (a chemical messenger that transmits signals from one neuron to another neuron, muscle cell, or gland cell) that is critical to the brain's control of motor function (among other things).

73.     The death of dopaminergic neurons in the SNpc decreases the production of dopamine.

74.     Once dopaminergic neurons die, they are not replaced; when enough dopaminergic neurons have died, dopamine production falls below the level the brain requires for proper control of motor function, resulting in the motor symptoms of Parkinson's disease.

75.     The presence of Lewy bodies (insoluble aggregates of a protein called alpha synuclein) in many of the remaining dopaminergic neurons in the SNpc is another of the primary pathophysiological hallmarks of Parkinson's disease.

76.     Dopaminergic neurons are particularly susceptible to oxidative stress, a disturbance in the normal balance between oxidants present in cells and cells' antioxidant defenses.

77.     Scientists who study Parkinson's disease generally agree that oxidative stress is a major factor in—if not the precipitating cause of—the degeneration and death of dopaminergic neurons in the SNpc and the accumulation of Lewy bodies in the remaining dopaminergic neurons that are the primary pathophysiological hallmarks of Parkinson's disease.

**F.  Paraquat's toxicity**

78.     Paraquat is highly toxic to both plants and animals because it causes andcontributes to cause the degeneration and death of living cells in both plants and animals.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

79.     Paraquat causes and contributes to cause the degeneration and death of plant and animal cells both directly, through oxidation, and indirectly, through oxidative stress created or aggravated by the "redox cycling" of paraquat; these processes damage lipids, proteins, and nucleic acids, molecules that are essential components of the structures and functions of living cells, and interfere with cellular functions—in plant cells, with photosynthesis, and in animal cells, with cellular respiration—that are essential to cellular health.

80.     In both plant and animal cells, paraquat undergoes redox cycling that creates or aggravates oxidative stress because of the "redox properties" inherent in paraquat's chemical composition and structure: paraquat is both a strong oxidant and has a high propensity to undergo redox cycling, and to do so repeatedly, in the presence of a suitable reductant and molecular oxygen, both of which are present in all living cells.

81.     The redox cycling of paraquat in living cells creates a "reactive oxygen species" known as superoxide radical, an extremely reactive molecule that can and often does initiate a cascading series of chemical reactions that can and often do create other reactive oxygen species that damage lipids, proteins, and nucleic acids, molecules that are essential components of the structures and functions of living cells.

82.     Because the redox cycling of paraquat can repeat indefinitely in the conditions typically present in living cells, a single molecule of paraquat can trigger the production of countless molecules of destructive superoxide radical. After even a tiny amount of paraquat enters the human brain, paraquat molecules continue to undergo redox cycling and continue to cause damage to human brain cells. This repeated cyclingcontinues in the presence of oxygen and continues to cause the death of dopaminergic neurons, eventually resulting in the onset of Parkinson's disease. However, even

after the onset of Parkinson's disease, the redox cycling continues to cause brain cell damage and death for as long as the victim lives.

83.     The oxidation and redox potentials of paraquat have been known to science since at least the 1930s, and in the exercise of ordinary care should have been known, and were known, to SYNGENTA and CHEVRON at all relevant times.

84.     That paraquat is highly toxic to all living cells—both plant cells and all types of animal cells—has been known to science since at least the mid   1960s, and in the exercise of ordinary care should have been known, and was known, to SYNGENTA and CHEVRON at all relevant times.

85.     The high toxicity of paraquat to living cells of all types creates a substantial risk of harm to persons exposed to paraquat, which SYNGENTA and CHEVRON should have known in the exercise of ordinary care, and did know, at all relevant times.

86.     The same oxidation and redox potentials that make paraquat highly toxic to plant cells and other types of animal cells make paraquat highly toxic to nerve cells, including dopaminergic neurons, and create a substantial risk of neurotoxic harm to persons exposed to paraquat. SYNGENTA and CHEVRON should have known this in the exercise of ordinary care, and did know this, at all relevant times.

**G. Paraquat and Parkinson's disease**

87.     The scientific community overwhelmingly agrees that paraquat causes Parkinson's disease.

88.     Although Parkinson's disease is not known to occur naturally in any species other than humans, Parkinson's disease research is often performed using "animal models," in which scientists artificially produce in laboratory animals' conditions that show features characteristic of Parkinson's disease in humans.

89.     Paraquat is one of only a handful of toxins that scientists use to produce animal models of Parkinson's disease.

90.     In animal models of Parkinson's disease, hundreds of studies involving various routes of exposure have found that paraquat causes the degeneration and death of dopaminergic neurons in the SNpc, other pathophysiology consistent with that seen in human Parkinson's disease, and motor deficits and behavioral changes consistent with those commonly seen in human Parkinson's disease.

91.     Hundreds of *in vitro* studies (experiments in a test tube, culture dish, or other controlled experimental environment) have found that paraquat causes the degeneration and death of dopaminergic neurons.

92.     Many epidemiological studies (studies of the patterns and causes of disease in defined populations) have found an association between paraquat exposure and Parkinson's disease, including multiple studies finding a two   to five   fold or greater increase in the risk of Parkinson's disease in populations with occupational exposure to paraquat compared to populations without such exposure.

**H.  Paraquat regulation**

93.     The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq*., which regulates the distribution, sale, and use of pesticides within the U.S., requires that pesticides be registered with the EPA prior to their distribution, sale, or use, except as described by FIFRA. 7 U.S.C. 136a(a).

94.     As part of the pesticide registration process, the EPA requires, among other things, a variety of tests to evaluate the potential for exposure to pesticides, toxicity to people and other potential non   target organisms, and other adverse effects on the environment.

COMPLAINT

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

95.     As a general rule, FIFRA requires registrants—not the EPA—to perform health and safety testing of pesticides, and the EPA generally does not perform such testing.

96.     The EPA registers (or re registers) a pesticide if it believes, based largely on studies and data submitted by the registrant, that:

    a.  its composition is such as to warrant the proposed claims for it, 7 U.S.C. § 136a(c)(5)(A);

    b.  its labeling and other material required to be submitted comply with the requirements of FIFRA, 7 U.S.C. § 136a(c)(5)(B);

    c.  it will perform its intended function without unreasonable adverse effects on the environment, 7 U.S.C. § 136a(c)(5)(C); and

    d.  when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment, 7 U.S.C. § 136a(c)(5)(D).

97.     FIFRA defines "unreasonable adverse effects on the environment" as "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb).

98.     Under FIFRA, "As long as no cancellation proceedings are in effect registration of a pesticide shall be prima facie evidence that the pesticide, its labeling and packaging comply with the registration provisions of [FIFRA]." 7 U.S.C. § 136a(f)(2).

99.     However, FIFRA further provides that "In no event shall registration of an article be construed as a defense for the commission of any offense under [FIFRA]."

7 U.S.C. § 136a(f)(2).

100.    FIFRA further provides that "…it shall be unlawful for any person in any State to distribute or sell to any person… any pesticide which is… misbranded."

7 U.S.C. § 136j(a)(1)(E).

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

101.   A pesticide is misbranded under FIFRA if, among other things:

a.   its labeling bears any statement, design, or graphic representation relative thereto or to its ingredients which is false or misleading in any particular, 7 U.S.C. § 136(q)(1)(A);

b.   the labeling accompanying it does not contain directions for use which are necessary for effecting the purpose for which the product is intended and if complied with, together with any requirements imposed under section 136a(d) of this title, are adequate to protect health and the environment, 7 U.S.C. § 136(q)(1)(F); or

c.   the label does not contain a warning or caution statement which may be necessary and if complied with, together with any requirements imposed under section 136a(d) of this title, is adequate to protect health and the environment," 7 U.S.C. § 136(q)(1)(G).

102.   Plaintiff do not seek in this action to impose on Defendants any labeling or packaging requirement in addition to or different from those required under FIFRA; accordingly, any allegation in this complaint that a Defendants breached a duty to provide adequate directions for the use of paraquat or warnings about paraquat, breached a duty to provide adequate packaging for paraquat, or concealed, suppressed, or omitted to disclose any material fact about paraquat or engaged in any unfair or deceptive practice regarding paraquat, is intended and should be construed to be consistent with that alleged breach, concealment, suppression, or omission, or unfair ordeceptive practice, having rendered the paraquat "misbranded" under FIFRA.

103.   Plaintiff brings claims and seek relief in this action only under state law. Plaintiff do not bring any claims or seek any relief in this action under FIFRA.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

22
COMPLAINT

VII.   **Allegations common to specific causes of action[5]**

   **A. Strict product liability – design defect**

104.   At all relevant times, Defendants and those with whom they were acting in concert were engaged in business of designing, manufacturing, and selling paraquat within the U.S.

105.   At all relevant times, Defendants and those with whom they were acting in concert intended and expected that Defendants' paraquat products[6] would be sold and used in the States of Oregon.

106.   Defendants and those with whom they were acting in concert developed, registered, manufactured, distributed, and sold paraquat for use in formulating Defendants' paraquat products, and developed, registered, formulated and distributed Defendants' paraquat products for sale and use in the U.S., including Oregon.

107.   Upon information and belief, for many years, Plaintiff used Defendants' paraquat products in Oregon and repeatedly and regularly for hours at a time, resulting in the repeated, regular, and prolonged exposure of Plaintiff to paraquat.

108.   At all relevant times, Defendants' paraquat products were in a defective condition that made them unreasonably dangerous when used in a manner that was intended or directed by or

---

[5] When used in an allegation in section VII or VIII of this Complaint, where the name of the party is not specified: (1) "Defendant" refers to the Defendants or Defendants from whom relief is sought in the Count in which the allegation appears or is incorporated and/or the predecessors of that Defendants or those Defendants; and (2) "Plaintiff" refers: (a) to the Plaintiff seeking relief in the Count in which the allegation appears or is incorporated, where the Count seeks damages for personal injuries; or (b) to the spouses of the Plaintiff seeking relief in the Count in which the allegation appears or is incorporated, where the Count seeks damages for loss of society or consortium.

[6] When used in an allegation in section VII or VIII of this Complaint, "Defendants' paraquat products": (1) refers to ICI CHEVRON paraquat products and/or ICI   SYNGENTA paraquat products when the allegation appears or is incorporated in a Count directed to SCPLLC and SAG; refers only to ICI   CHEVRON paraquat products when the allegation appears or is incorporated in a Count directed to CUSA.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

reasonably foreseeable to, and was known to or foreseen by, Defendants and those with whom they were acting in concert, in that:

    a.   they were designed, manufactured, formulated, and packaged such that when so used, paraquat was likely to be inhaled, ingested, and absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed; and

    b.   when inhaled, ingested, or absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, paraquat was likely to cause or contribute to cause latent, permanent, and cumulative neurological damage, and repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure.

109.    At all relevant times, this defective condition in Defendants' paraquat products existed when they left the control of Defendants and those with whom they were acting in concert and were placed into the stream of commerce.

110.    At all relevant times, Defendants and those with whom they were acting in concert knew or foresaw that this defective condition of Defendants' paraquat products would create a substantial risk of harm to persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, but in conscious disregard for the safety of others, including Plaintiff, continued to place them into the stream of commerce.

111.    As a result of this defective condition, Defendants' paraquat products either failed to perform in the manner reasonably to be expected in light of their nature and intended function, or the magnitude of the dangers outweighed their utility.

112.    At all relevant times, Defendants' paraquat products were used in a manner that was intended or directed by or reasonably foreseeable to, and was known to or foreseen by, Defendants and those with whom they were acting in concert.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

113.    At all relevant times, Defendants concealed the defective condition of their product from Plaintiff thus preventing Plaintiff from discovering the causal link between their injury and paraquat.

**B.  Strict product liability – Failure to warn**

114.    At all relevant times, Defendants and those with whom they were acting inconcert were engaged in the U.S. paraquat business.

115.    At all relevant times, Defendants and those with whom they were acting in concert intended and expected that Defendants' paraquat products would be sold andused in the State of Oregon.

116.    Defendants and those with whom they were acting in concert developed, registered, manufactured, distributed, and sold paraquat for use in formulating Defendants' paraquat products, and developed, registered, formulated and distributed Defendants' paraquat products for sale and use in the U.S., including Oregon.

117.    Upon information and belief, for many years, Plaintiff used Defendants' paraquat products in Oregon repeatedly and regularly for hours at a time, resulting in the repeated, regular, and prolonged exposure of Plaintiff to paraquat.

118.    At all relevant times, Defendants and those with whom they were acting in concert should have known in the exercise of ordinary care, and did know, that when used in a manner that was intended or directed by or reasonably foreseeable to, and was known to or foreseen by, Defendants and those with whom it was acting in concert:

    a.  Defendants' paraquat products were designed, manufactured, formulated, and packaged such that when so used, paraquat was likely to be inhaled, ingested, and absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed; and

b.  when inhaled, ingested, or absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, paraquat was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure.

119.    At all relevant times, Defendants' paraquat products were in a defective condition that made them unreasonably dangerous when used in a manner that was intended or directed by or reasonably foreseeable to, and was known to or foreseen by, Defendants and those with whom they were acting in concert, in that:

a.  they were not accompanied by directions for use that would have made paraquat unlikely to be inhaled, ingested, and absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed; and

b.  they were not accompanied by a warning that when inhaled, ingested, or absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, paraquat was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and that repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure.

120.    At all relevant times, this defective condition in Defendants' paraquat products existed when they left the control of Defendants and those with whom they were acting in concert and were placed into the stream of commerce.

121.    At all relevant times, Defendants and those with whom it was acting in concert knew this defective condition of Defendants' paraquat products created a substantial risk of harm to persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, but in conscious disregard for the safety of others, including Plaintiff, continued to place them into the stream of commerce.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

122.    As a result of this defective condition, Defendants' paraquat products either failed to perform in the manner reasonably to be expected in light of their nature and intended function, or the magnitude of the dangers outweighed their utility.

123.    At all relevant times, Defendants' paraquat products were used in a manner that was intended or directed by or reasonably foreseeable to, and was known to or foreseen by, Defendants and those with whom they were acting in concert.

124.    At all relevant times, Defendants concealed the defective condition of their product from Plaintiff thus preventing Plaintiff from discovering the causal link between their injury and paraquat.

**C. Negligence**

125.    At all relevant times, Defendants and those with whom they were acting inconcert were engaged in the U.S. paraquat business.

126.    At all relevant times, Defendants and those with whom they were acting in concert intended and expected that Defendants' paraquat products would be sold and used in the State of Oregon.

127.    Defendants and those with whom they were acting in concert developed, registered, manufactured, distributed, and sold paraquat for use in formulating Defendants' paraquat products, and developed, registered, formulated and distributed Defendants' paraquat products for sale and use in the U.S., including Oregon.

128.    Upon information and belief, for many years, Plaintiff used Defendants' paraquat products in Oregon repeatedly and regularly for hours at a time, resulting in the repeated, regular, and prolonged exposure of Plaintiff to paraquat.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

129.   At all relevant times, in designing, manufacturing, and distributing paraquat for use in formulating paraquat products and in designing, formulating, packaging, labeling, and distributing paraquat products, Defendants and those with whom they were acting in concert owed a duty to exercise ordinary care for the health and safety of persons, including Plaintiff, whom it was reasonably foreseeable could be exposed to paraquat in such products.

130.   When Defendants and those with whom they were acting in concert designed, manufactured, and distributed paraquat for use in formulating Defendants' paraquat products and designed, formulated, packaged, labeled, and distributed Defendants' paraquat products, it was reasonably foreseeable and in the exercise of ordinary care Defendants should have known, and Defendants did know, that when Defendants' paraquat products were used in a manner that was intended or directed by or reasonably foreseeable to, and was known to or foreseen by, Defendants and those with whom they were acting in concert:

   a.   they were designed, manufactured, formulated, and packaged such that paraquat was likely to be inhaled, ingested, and absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed; and

   b.   when inhaled, ingested, or absorbed into the bodies of persons whoused them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, paraquat was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure.

131.   In breach of their duty to Plaintiff, Defendants and those with whom they were acting in concert negligently, and in conscious disregard for the safety of others:

   a.   failed to design, manufacture, formulate, and package Defendants' paraquat products to make paraquat unlikely to be inhaled, ingested, and absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed;

Panish Shea & Boyle LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

b.  designed and manufactured paraquat and designed and formulated Defendants' paraquat products such that when inhaled, ingested, or absorbed into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, paraquat was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure;

c.  failed to perform adequate testing to determine the extent to which exposure to paraquat was likely to occur through inhalation, ingestion, and absorption into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed;

d.  failed to perform adequate testing to determine the extent to which spray drift from Defendants' paraquat products was likely to occur, including their propensity to drift, the distance they were likely to drift, and the extent to which paraquat spray droplets were likely to enter the bodies of persons spraying Defendants' paraquat products or nearby during or after spraying;

e.  failed to perform adequate testing to determine the extent to which paraquat, when inhaled, ingested, or absorbed into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to developover time and manifest long after exposure;

f.  failed to perform adequate testing to determine the extent to which paraquat, when formulated or mixed with surfactants or other pesticides or used along with other pesticides, and inhaled, ingested, or absorbed into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure;

g.  failed to direct that Defendants' paraquat products be used in a manner that would have made it unlikely for paraquat to have been inhaled, ingested, and absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed; and

COMPLAINT

h.   failed to warn that when inhaled, ingested, or absorbed into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, paraquat was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure.

132.   At all relevant times, Defendants' paraquat products were used in a manner that was intended or directed by or reasonably foreseeable to, and was known to or foreseen by, Defendants and those with whom they were acting in concert.

133.   At all relevant times, Defendants concealed the dangers  of their product as listed above from Plaintiff thus preventing Plaintiff from discovering the causal link between their injury and paraquat.

### D.  Public nuisance

134.   At all relevant times, Defendants and those with whom it was acting in concert were engaged in the U.S. paraquat business.

135.   At all relevant times, Defendants and those with whom it was acting in concert intended and expected that Defendants' paraquat products would be sold and used in the State of Oregon.

136.   Defendants and those with whom it was acting in concert developed, registered, manufactured, distributed, and sold paraquat for use in formulating Defendants' paraquat products, and developed, registered, formulated and distributed Defendants' paraquat products for sale and use in the U.S., including Oregon.

137.   Upon information and belief, for many years, Plaintiff used Defendants' paraquat products in Oregon repeatedly and regularly for hours at a time, resulting in the repeated, regular, and prolonged exposure of Plaintiff to paraquat.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

138.    At all relevant times, Defendants and those with whom they were acting in concert owed a duty to the public, including Plaintiff and other persons whom they could reasonably foresee were likely to use Defendants' paraquat products or otherwise be in or near places where they were being or recently had been used within the State of Oregon, to provide and maintain a healthful environment and uphold the public's and Plaintiff's right to a healthful environment in connection with the design, manufacture, and distribution of paraquat for use in formulating Defendants' paraquat products, and the design, formulation and distribution of Defendants' paraquat products, that Defendants intended and expected to be used in the State of Oregon.

139.    When Defendants and those with whom they were acting in concert designed, manufactured, and distributed paraquat for use in formulating Defendants' paraquat products and designed, formulated, packaged, labeled, and distributed Defendants' paraquat products, it was reasonably foreseeable and in the exercise of ordinary care Defendants should have known, and Defendants did know, that when Defendants' paraquat products were used in a manner that was intended or directed by or reasonably foreseeable to, and was known to or foreseen by, Defendants and those with whom it was acting in concert:

  a.  they were designed, manufactured, formulated, and packaged such that paraquat was likely to be inhaled, ingested, and absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed; and

  b.  when inhaled, ingested, or absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, paraquat was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

140.   In breach of their duty to members of the public, including Plaintiff, Defendants and those with whom it was acting in concert negligently, and in conscious disregard for the safety of others:

   a.   failed to design, manufacture, formulate, and package Defendants' paraquat products to make paraquat unlikely to be inhaled, ingested, and absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed;

   b.   designed and manufactured paraquat and designed and formulated Defendants' paraquat products such that when inhaled, ingested, or absorbed into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, paraquat was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure;

   c.   failed to perform adequate testing to determine the extent to which exposure to paraquat was likely to occur through inhalation, ingestion, and absorption into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed;

   d.   failed to perform adequate testing to determine the extent to which spray drift from Defendants' paraquat products was likely to occur, including their propensity to drift, the distance they were likely to drift, and the extent to which paraquat spray droplets were likely to enter the bodies of persons spraying Defendants' paraquat products or nearby during or after spraying;

   e.   failed to perform adequate testing to determine the extent to which paraquat, when inhaled, ingested, or absorbed into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure;

   f.   failed to perform adequate testing to determine the extent to which paraquat, when formulated or mixed with surfactants or other pesticides or used along with other pesticides, and inhaled, ingested, or absorbed into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been

sprayed, was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure;

g.   failed to direct that Defendants' paraquat products be used in a manner that would have made it unlikely for paraquat to have been inhaled, ingested, and absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed; and

h.   failed to warn that when inhaled, ingested, or absorbed into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, paraquat was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure.

141.   At all relevant times, Defendants' paraquat products were used in a manner that was intended or directed by or reasonably foreseeable to, and was known to and foreseen by, Defendants and those with whom it was acting in concert.

**E.   The Oregon Unlawful Trade Practices Act, Or. Rev. Stat. §§ 646.605, *et seq.***

142.   At all relevant times, Defendants and those with whom they were acting in concert were engaged in the U.S. paraquat business.

143.   At all relevant times, Defendants and those with whom they were acting in concert intended and expected that Defendants' paraquat products would be sold and used in the State of Oregon.

144.   Defendants and those with whom they were acting in concert developed, registered, manufactured, distributed, and sold paraquat for use in formulating Defendants' paraquat products, and developed, registered, formulated and distributed Defendants' paraquat products for sale and use in the U.S., including Oregon.

145.   Upon information and belief, Plaintiff Lloyd Parsons and/or his employers purchased Defendants' paraquat products in Oregon for the purpose of controlling weeds and not for resale, and for many years, Plaintiff used these products in Oregon repeatedly and regularly for hours at a time, resulting in the repeated, regular, and prolonged exposure of Plaintiff to paraquat.

146.   At all relevant times and upon information and belief, Plaintiff, Defendant, and others with whom Defendants acted in concert, were persons within the meaning of Or. Rev. Stat. § 646.605(4).

147.   At all relevant times, Plaintiff Lloyd Parsons was a consumer.

148.   The Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.08 (e); (g), provides in pertinent part:

> A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following: […] Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have […] Represents that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another.

149.   At all relevant times, Defendants and those with whom they were acting in concert had both constructive and actual knowledge that when Defendants' paraquat products were used in a manner that was intended or directed by or reasonably foreseeable to, and was known to or foreseen by, Defendants and those with whom they were acting in concert:

    a.   they were designed, manufactured, formulated, and packaged such that paraquat was likely to be inhaled, ingested, and absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed; and

    b.   when inhaled, ingested, or absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, paraquat was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and

34
COMPLAINT

repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure.

150.   At all relevant times, Defendants and those with whom they were acting in concert had both constructive and actual knowledge that:

    a.   adequate testing had not been performed to determine the extent towhich exposure to paraquat was likely to occur through inhalation, ingestion, and absorption into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where there had been sprayed;

    b.   adequate testing had not been performed to determine the extent towhich spray drift was likely to occur when Defendants' paraquat products were used, including their propensity to drift, the distance they were likely to drift, and the extent to which paraquat spray droplets were likely to enter the bodies ofpersons spraying or others nearby during or after spraying;

    c.   adequate testing had not been performed to determine the extent towhich paraquat, when inhaled, ingested, or absorbed into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, were likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure; and

    d.   adequate testing had not been performed to determine the extent towhich paraquat, when formulated or mixed with surfactants or other pesticides or used along with other pesticides, and inhaled, ingested, or absorbed into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayedor areas near where there had been sprayed, was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure.

151.   From the first date on which Defendants and those with whom they were acting in concert placed Defendants' paraquat products into the stream of commerce for use in the State of Oregon through the last date on which Plaintiff was exposed to Defendants' paraquat products, Defendants and those with whom they were acting in concert engaged in unfair or deceptive acts or

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

practices, including but not limited to deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of material facts, in designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use in the State of Oregon and in designing, formulating, anddistributing Defendants' paraquat products for sale and use in the State of Oregon, in that they:

    a. concealed, suppressed, or omitted to disclose that Defendants' paraquat products were designed, manufactured, formulated, and packaged such that paraquat was likely to be inhaled, ingested, and absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where theyhad been sprayed;

    b. concealed, suppressed, or omitted to disclose that when inhaled, ingested, or absorbed into the bodies of persons who used Defendants' paraquatproducts, were nearby while they were was being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, paraquat was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure;

    c. concealed, suppressed, or omitted to disclose that adequate testing had not been performed to determine the extent to which exposure to paraquat was likely to occur through inhalation, ingestion, and absorption into the bodiesof persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed orareas near where they had been sprayed;

    d. concealed, suppressed, or omitted to disclose that adequate testing had not been performed to determine the extent to which spray drift was likely to occur when Defendants' paraquat products were used, including their propensity to drift, the distance they were likely to drift, and the extent to whichparaquat spray droplets were likely to enter the bodies of persons spraying or others nearby during or after spraying;

    e. concealed, suppressed, or omitted to disclose that adequate testing had not been performed to determine the extent to which paraquat, when inhaled, ingested, or absorbed into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields ororchards where they had been sprayed or areas near where they had been sprayed, was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

time and manifest long after exposure; and

  f. concealed, suppressed, or omitted to disclose that adequate testing had not been performed to determine the extent to which paraquat, when formulated or mixed with surfactants or other pesticides or used along with other pesticides, and inhaled, ingested, or absorbed into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure.

152. These acts and practices of Defendants and those with whom they were acting in concert in designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use in the State of Oregon and in designing, formulating, and distributing Defendants' paraquat products for sale and use in the State of Oregon were unfair because they offended public policy, were immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to consumers.

153. These acts and practices of Defendants and those with whom they were acting in concert in designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use in the State of Oregon and in designing, formulating, and distributing Defendants' paraquat products for sale and use in the State of Oregon offended the clearly stated public policy of the State of Oregon, as expressed in Cal. Const. Art. I, § I, that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

154. These acts and practices of Defendants and those with whom they were acting in concert in designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use in the State of Oregon and in designing,

formulating, and distributing Defendants' paraquat products for sale and use in the State of Oregon offended the clearly stated public policy of the State of Oregon, as expressed in Or. Rev. Stat. § 468, that:

    a.  In the interest of the public peace, health and safety, it is the policy of the State of Oregon to assist in the prevention, control and reduction of air, water and noise pollution and solid waste, hazardous wastes and used oil in this state …

    b.  It the policy of this state to support the maintenance, enhancement and restoration of ecosystem services throughout Oregon, focusing on the protection of land, water, air, soil and native flora and fauna.

155.   The public policy of the State of Oregon is further expressed in Article XV of the Oregon Constitution, which provides:

The people of the State of Oregon also find that renewal of the Parks and Natural Resources Fund will support voluntary efforts to: (1) Protect and restore water quality, watersheds and habitats for native fish and wildlife that provide a healthy environment for current and future generations of Oregonians…

156.   These acts and practices of Defendants and those with whom they were acting in concert in designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use in the State of Oregon and in designing, formulating, and distributing Defendants' paraquat products for sale and use in the State of Oregon were immoral and unethical, as they served only to benefit Defendants and those with whom they were acting in concert at the expense of the heath of purchasers and users of Defendants' paraquat products and the public.

157.   These acts and practices of Defendants and those with whom they were acting in concert in designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use in the State of Oregon and in designing, formulating, and distributing Defendants' paraquat products for sale and use in the State of Oregon

were likely to cause substantial injury to purchasers and users of paraquat and the public by exposing them to unnecessary risks to their health.

158.    These acts and practices of Defendants and those with whom they were acting in concert in designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use in the State of Oregon and in designing, formulating, and distributing Defendants' paraquat products for sale and use in the State of Oregon were likely to cause, and did cause, substantial injury to purchasers and users of paraquat and the public in that but for these acts and practices, Defendants' paraquat products would not have been purchased for use in Oregon and persons who used them, were nearby while they was being used, or entered fields or orchards where they had been sprayed or areas near where it they been sprayed, would not have been injured by exposure to paraquat.

159.    Defendants and those with whom they were acting in concert in designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use in the State of Oregon and in designing, formulating, and distributing Defendants' paraquat products for sale and use in the State of Oregon committed these acts and engaged in these practices in conscious disregard of the safety of others, including Plaintiff Lloyd Parsons.

160.    The injuries caused by these acts and practices of Defendants and those with whom they were acting in concert in designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use in the State of Oregon and in designing, formulating, and distributing Defendants' paraquat products for sale and use in the State of Oregon—namely, purchasers' monetary losses and the injuries and damages (including monetary losses) to persons who used them, were nearby while they were being used, or entered

Panish Shea & Boyle LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

fields or orchards where they had been sprayed or areas near where they had been sprayed, including Plaintiff Lloyd Parsons—are not outweighed by any countervailing benefit to consumers or competition.

161.   The injuries caused by these acts and practices of Defendants and those with whom they were acting in concert in designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use in the State of Oregon and in designing, formulating, and distributing Defendants' paraquat products for sale and use in the State of Oregon—namely, purchasers' monetary losses and the injuries and damages (including monetary losses) to persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, including Plaintiff—were not reasonably avoidable; because Defendants and those with whom they were acting in concert had and failed to disclose material non‑public information, consumers had no reason to anticipate the impending harm and thus avoid their injuries.

162.   Defendants and those with whom they were acting in concert intended that purchasers of Defendants' paraquat products, including Plaintiff Lloyd Parsons, purchase them in reliance on these unfair and deceptive acts and practices.

163.   The facts that Defendants and those with whom they were acting in concert concealed, suppressed, or omitted to disclose were material to the decisions to purchase Defendants' paraquat products, and would not have been purchased had these facts been disclosed.

164.   These unfair and deceptive acts and practices of Defendants and those with whom they were acting in concert occurred in connection with their conduct of trade and commerce in the State of Oregon.

165.    These unfair and deceptive acts and practices of Defendants and those with whom they were acting in concert violated the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. §§ 646.605, *et seq.*

166.    Defendants and those with whom they were acting in concert committed these unfair and deceptive practices knowing they created a substantial risk of harm to Plaintiff Lloyd Parsons and others who purchased and used Defendants' paraquat products in Oregon.

**F.   California Consumer Legal Remedies Act, Cal. Civ. § 1750, *et seq.***

167.    At all relevant times, Defendants and those with whom they were acting in concert were engaged in the U.S. paraquat business.

168.    At all relevant times, Defendants and those with whom they were acting in concert intended and expected that Defendants' paraquat products would be sold from in the State of California and used in other states such as Oregon.

169.    Defendants and those with whom they were acting in concert developed, registered, manufactured, distributed, and sold paraquat for use in formulating Defendants' paraquat products, and developed, registered, formulated and distributed Defendants' paraquat products for sale in the U.S., including California and used in other states such as Oregon.

170.    Upon information and belief, Plaintiff Lloyd Parsons's employers purchased Defendants' paraquat products in California for the purpose of controlling weeds and not for resale, and for many years, Plaintiff Lloyd Parsons used these products that developed, registered, manufactured, distributed, and sold from California in Oregon repeatedly and regularly for hours at a time, resulting in the repeated, regular, and prolonged exposure of Plaintiff Lloyd Parsons to paraquat.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

171.    At all relevant times and upon information and belief, Plaintiff Lloyd Parsons, Defendant, and others with whom Defendant acted in concert, were persons within the meaning of Cal. Civ. Code § 1761(c).

172.    At all relevant times, Plaintiff Lloyd Parsons was a consumer within the meaning of Cal. Civ. Code § 1761(d).

173.    The California Consumer Legal Remedies Act, Cal. Civ. § 1770(a)(5); (7), provides in pertinent part:

> The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful: Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have [...] Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

174.    At all relevant times, Defendants and those with whom they were acting in concert had both constructive and actual knowledge that when Defendants' paraquat products were used in a manner that was intended or directed by or reasonably foreseeable to, and was known to or foreseen by, Defendants and those with whom they were acting in concert:

  a.  they were designed, manufactured, formulated, and packaged suchthat paraquat was likely to be inhaled, ingested, and absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed; and

  b.  when inhaled, ingested, or absorbed into the bodies of persons whoused them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, paraquat was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure.

175.    At all relevant times, Defendants and those with whom they were acting in concert had both constructive and actual knowledge that:

a.  adequate testing had not been performed to determine the extent towhich exposure to paraquat was likely to occur through inhalation, ingestion, and absorption into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where there had been sprayed;

b.  adequate testing had not been performed to determine the extent towhich spray drift was likely to occur when Defendants' paraquat products were used, including their propensity to drift, the distance they were likely to drift, and the extent to which paraquat spray droplets were likely to enter the bodies ofpersons spraying or others nearby during or after spraying;

c.  adequate testing had not been performed to determine the extent towhich paraquat, when inhaled, ingested, or absorbed into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, were likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure; and

d.  adequate testing had not been performed to determine the extent towhich paraquat, when formulated or mixed with surfactants or other pesticides or used along with other pesticides, and inhaled, ingested, or absorbed into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayedor areas near where there had been sprayed, was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure.

176.    From the first date on which Defendants and those with whom they were acting in concert placed Defendants' paraquat products into the stream of commerce from the State of California through the last date on which Plaintiff Lloyd Parsons was exposed to Defendants' paraquat products, Defendants and those with whom they were acting in concert engaged in unfair or deceptive acts or practices, including but not limited to deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of material facts, in

43

COMPLAINT

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use from the State of California and in designing, formulating, and distributing Defendants' paraquat products for sale and use from the State of California, in that they:

a. concealed, suppressed, or omitted to disclose that Defendants' paraquat products were designed, manufactured, formulated, and packaged such that paraquat was likely to be inhaled, ingested, and absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed;

b. concealed, suppressed, or omitted to disclose that when inhaled, ingested, or absorbed into the bodies of persons who used Defendants' paraquat products, were nearby while they were was being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, paraquat was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure;

c. concealed, suppressed, or omitted to disclose that adequate testing had not been performed to determine the extent to which exposure to paraquat was likely to occur through inhalation, ingestion, and absorption into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed;

d. concealed, suppressed, or omitted to disclose that adequate testing had not been performed to determine the extent to which spray drift was likely to occur when Defendants' paraquat products were used, including their propensity to drift, the distance they were likely to drift, and the extent to which paraquat spray droplets were likely to enter the bodies of persons spraying or others nearby during or after spraying;

e. concealed, suppressed, or omitted to disclose that adequate testing had not been performed to determine the extent to which paraquat, when inhaled, ingested, or absorbed into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure; and

f.  concealed, suppressed, or omitted to disclose that adequate testing had not been performed to determine the extent to which paraquat, when formulated or mixed with surfactants or other pesticides or used along with other pesticides, and inhaled, ingested, or absorbed into the bodies of persons who used Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, was likely to cause or contribute to cause latent, cumulative, and permanent neurological damage, and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure.

177.  These acts and practices of Defendants and those with whom they were acting in concert in designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use from the State of California and in designing, formulating, and distributing Defendants' paraquat products for sale and use from the State of California were unfair because they offended public policy, were immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to consumers.

178.  These acts and practices of Defendants and those with whom they were acting in concert in designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use from the State of California and in designing, formulating, and distributing Defendants' paraquat products for sale and use from the State of California offended the clearly stated public policy of the State of California, as expressed in Cal. Const. Art. I, § I, that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

179.  These acts and practices of Defendants and those with whom they were acting in concert in designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use from the State of California and in designing, formulating, and distributing Defendants' paraquat products for sale and use from the State of

45
COMPLAINT

California offended the clearly stated public policy of the State of California, as expressed in California Environmental Quality Act, Cal. Pub. Res. Code § 21000, that:

    a.   The maintenance of a quality environment for the people of this state now and in the future is a matter of statewide concern.

    b.   It is necessary to provide a high-quality environment that at all times is healthful and pleasing to the senses and intellect of man.

    c.   It is the intent of the Legislature that all agencies of the state government which regulate activities of private individuals, corporations, and public agencies which are found to affect the quality of the environment, shall regulate such activities so that major consideration is given to preventing environmental damage, while providing a decent home and satisfying living environment for every Californian.

180. These acts and practices of Defendants and those with whom they were acting in concert in designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use from the State of California and in designing, formulating, and distributing Defendants' paraquat products for sale and use from the State of California were immoral and unethical, as they served only to benefit Defendants and those with whom they were acting in concert at the expense of the heath of purchasers and users of Defendants' paraquat products and the public.

181. These acts and practices of Defendants and those with whom they were acting in concert in designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use from the State of California and in designing, formulating, and distributing Defendants' paraquat products for sale and use from the State of California were likely to cause substantial injury to purchasers and users of paraquat and the public by exposing them to unnecessary risks to their health.

182. These acts and practices of Defendants and those with whom they were acting in concert in designing, manufacturing, and distributing paraquat for use in formulating Defendants'

paraquat products for distribution for sale and use from the State of California and in designing, formulating, and distributing Defendants' paraquat products for sale and use from the State of California were likely to cause, and did cause, substantial injury to purchasers and users of paraquat and the public in that but for these acts and practices, Defendants' paraquat products would not have been purchased for use in Oregon and persons who used them, were nearby while they was being used, or entered fields or orchards where they had been sprayed or areas near where it they been sprayed, would not have been injured by exposure to paraquat.

183.    Defendants and those with whom they were acting in concert in designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use from the State of California and in designing, formulating, and distributing Defendants' paraquat products for sale and use from the State of California committed these acts and engaged in these practices in conscious disregard of the safety of others, including Plaintiff Lloyd Parsons.

184.    The injuries caused by these acts and practices of Defendants and those with whom they were acting in concert in designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use from the State of California and in designing, formulating, and distributing Defendants' paraquat products for sale and use from the State of California—namely, purchasers' monetary losses and the injuries and damages (including monetary losses) to persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, including Plaintiff Lloyd Parsons—are not outweighed by any countervailing benefit to consumers or competition.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

185.    The injuries caused by these acts and practices of Defendants and those with whom they were acting in concert in designing, manufacturing, and distributing paraquat for use in formulating Defendants' paraquat products for distribution for sale and use from the State of California and in designing, formulating, and distributing Defendants' paraquat products for sale and use from the State of California—namely, purchasers' monetary losses and the injuries and damages (including monetary losses) to persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, including Plaintiff Lloyd Parsons—were not reasonably avoidable; because Defendants and those with whom they were acting in concert had and failed to disclose material non  public information, consumers had no reason to anticipate the impending harm and thus avoid their injuries.

186.    Defendants and those with whom they were acting in concert intended that purchasers of Defendants' paraquat products, including Plaintiff Lloyd Parsons, purchase them in reliance on these unfair and deceptive acts and practices.

187.    The facts that Defendants and those with whom they were acting in concert concealed, suppressed, or omitted to disclose were material to the decisions to purchase Defendants' paraquat products, and would not have been purchased had these facts been disclosed.

188.    These unfair and deceptive acts and practices of Defendants and those with whom they were acting in concert occurred in connection with their conduct of trade and commerce from the State of California.

189.    These unfair and deceptive acts and practices of Defendants and those with whom they were acting in concert violated the California Consumer Legal Remedies Act, 1750, *et seq.*

190.    Defendants and those with whom they were acting in concert committed these unfair and deceptive practices knowing they created a substantial risk of harm to Plaintiff Lloyd Parsons and others who purchased and used Defendants' paraquat products in California.

### G. Breach of implied warranty of merchantability

191.    At all relevant times, Defendants and those with whom they were acting inconcert were engaged in the U.S. paraquat business.

192.    At all relevant times, Defendants and those with whom they were acting in concert intended and expected that Defendants' paraquat products would be sold andused in the State of Oregon.

193.    Defendants and those with whom they were acting in concert developed, registered, manufactured, distributed, and sold paraquat for use in formulating Defendants' paraquat products, and developed, registered, formulated and distributed Defendants' paraquat products for sale and use in the U.S., including Oregon.

194.    Upon information and belief, Plaintiff used Defendants' paraquat products in Oregon repeatedly and regularly for hours at a time, resulting in the repeated, regular, and prolonged exposure of Plaintiff to paraquat.

195.    At the time of each sale of Defendants' paraquat products that resulted in Plaintiff's exposure to paraquat, Defendants and those with whom they were acting in concert impliedly warranted that Defendants' paraquat products were of merchantable quality, including that they were fit for the ordinary purposes for which such goods were used, pursuant to section 2  314 of the Uniform Commercial Code.

196.    Defendants and those with whom they were acting in concert breached this warranty as to each sale of Defendants' paraquat products that resulted in Plaintiff' exposure to paraquat, in

that Defendants' paraquat products were not of merchantable quality because they were not fit for the ordinary purposes for which such goods were used, and in particular:

    a.  they were designed, manufactured, formulated, and packaged suchthat paraquat was likely to be inhaled, ingested, and absorbed into the bodies of persons who used them, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed; and

    b.  when inhaled, ingested, or absorbed into the bodies of persons whoused Defendants' paraquat products, were nearby while they were being used, or entered fields or orchards where they had been sprayed or areas near where they had been sprayed, paraquat was likely to cause or contribute to cause latent,cumulative, and permanent neurological damage, and repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease, to develop over time and manifest long after exposure.

## COUNT 1 – STRICT PRODUCT LIABILITY DESIGN DEFECT
## PLAINTIFF v. DEFENDANTS SCPLLC AND SAG

197.    Plaintiff incorporates in this Count by reference paragraphs 1 through 196 of this Complaint.

198.    As a direct and proximate result of the defective and unreasonably dangerous condition of Defendants' paraquat products, Plaintiff Lloyd Parsons developed Parkinson's disease; has suffered severe and permanent physical pain, mental anguish, and disability, and will continue to do so for the remainder of his life; has suffered the loss of a normal life and will continue to do so for the remainder of his life; has lost income that he otherwise would have earned and will continue to do so for the remainder of his life; and has incurred reasonable expenses for necessary medical treatment and will continue to do so for the remainder of his life.

## COUNT 2 – STRICT PRODUCT LIABILITY – FAILURE TO WARN
## PLAINTIFF v. DEFENDANTS SCPLLC AND SAG

199.    Plaintiff incorporates in this Count by reference paragraphs 1 through 196 of this Complaint.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

200.    As a direct and proximate result of the lack of adequate directions for the use of and warnings about the dangers of Defendants' paraquat products, Plaintiff Lloyd Parsons developed Parkinson's disease; has suffered severe and permanent physical pain, mental anguish, and disability, and will continue to do so for the remainder of his life; has suffered the loss of a normal life and will continue to do so for the remainder of his life; has lost income that he otherwise would have earned and will continue to do so for the remainder of his life; and has incurred reasonable expenses for necessary medical treatment and will continue to do so for the remainder of his life.

**COUNT 3 – NEGLIGENCE**
**PLAINTIFF v. DEFENDANTS SCPLLC AND SAG**

201.    Plaintiff incorporates in this Count by reference paragraphs 1 through 196 of this Complaint.

202.    As a direct and proximate result of the negligence of Defendants and those with whom they were acting in concert, Plaintiff Lloyd Parsons developed Parkinson's disease; has suffered severe and permanent physical pain, mental anguish, and disability, and will continue to do so for the remainder of his life; has suffered the loss of a normal life and will continue to do so for the remainder of his life; has lost income that he otherwise would have earned and will continue to do so for the remainder of his life; and has incurred reasonable expenses for necessary medical treatment and will continue to do so for the remainder of his life.

**COUNT 4 – PUBLIC NUISANCE**
**PLAINTIFF v. DEFENDANTS SCPLLC AND SAG**

203.    Plaintiff incorporates in this Count by reference paragraphs 1 through 196 of this Complaint.

204.    As a direct and proximate result of the public nuisance created by Defendants and those with whom they were acting in concert, Plaintiff Lloyd Parsons developed Parkinson's disease;

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

has suffered severe and permanent physical pain, mental anguish, and disability, and will continue to do so for the remainder of his life; has suffered the loss of a normal life and will continue to do so for the remainder of his life; has lost income that he otherwise would have earned and will continue to do so for the remainder of his life; and has incurred reasonable expenses for necessary medical treatment and will continue to do so for the remainder of his life.

## COUNT 5 – OREGON UNLAWFUL TRADE PRACTICES ACT & CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### PLAINTIFF v. DEFENDANTS SCPLLC AND SAG

205.    Plaintiff incorporates in this Count by reference paragraphs 1 through 196 of this Complaint.

206.    As a direct and proximate result of the violations the Oregon Unlawful Trade Practices Act and the California Consumer Legal Remedies Act by Defendants and those with whom they were acting in concert, Plaintiff Lloyd Parsons developed Parkinson's disease; has suffered severe and permanent physical pain, mental anguish, and disability, and will continue to do so for the remainder of his life; has suffered the loss of a normal life and will continue to do so for the remainder of his life; has lost income that he otherwise would have earned and will continue to do so for the remainder of his life; and has incurred reasonable expenses for necessary medical treatment and will continue to do so for the remainder of his life.

## COUNT 6 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### PLAINTIFF v. DEFENDANTS SCPLLC AND SAG

207.    Plaintiff incorporates in this Count by reference paragraphs 1 through 196 of this Complaint.

208.    As a direct and proximate result of the breaches of the implied warranty of merchantability by Defendants and those with whom they were acting in concert, Plaintiff Lloyd Parsons developed Parkinson's disease; has suffered severe and permanent physical pain, mental

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

anguish, and disability, and will continue to do so for the remainder of his life; has suffered the loss of a normal life and will continue to do so for the remainder of his life; has lost income that he otherwise would have earned and will continue to do so for the remainder of his life; and has incurred reasonable expenses for necessary medical treatment and will continue to do so for the remainder of his life.

## COUNT 7 – STRICT PRODUCT LIABILITY – DESIGN DEFECT
### PLAINTIFF v. DEFENDANTS CHEVRON U.S.A., INC.

209.    Plaintiff incorporates in this Count by reference paragraphs 1 through 196 of this Complaint.

210.    As a direct and proximate result of the defective and unreasonably dangerous condition of Defendants' paraquat products, Plaintiff Lloyd Parsons developed Parkinson's disease; has suffered severe and permanent physical pain, mental anguish, and disability, and will continue to do so for the remainder of his life; has suffered the loss of a normal life and will continue to do so for the remainder of his life; has lost income that he otherwise would have earned and will continue to do so for the remainder of his life; and has incurred reasonable expenses for necessary medical treatment and will continue to do so for the remainder of his life.

## COUNT 8 – STRICT PRODUCT LIABILITY – FAILURE TO WARN
### PLAINTIFF v. DEFENDANTS CHEVRON U.S.A., INC.

211.    Plaintiff incorporates in this Count by reference 1 through 196 of this Complaint.

212.    As a direct and proximate result of the lack of adequate directions for the use of and warnings about the dangers of Defendants' paraquat products, Plaintiff John developed Parkinson's disease; has suffered severe and permanent physical pain, mental anguish, and disability, and will continue to do so for the remainder of his life; has suffered the loss of a normal life and will continue to do so for the remainder of his life; has lost income that he otherwise would have earned and will

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

continue to do so for the remainder of his life; and has incurred reasonable expenses for necessary medical treatment and will continue to do so for the remainder of his life.

### COUNT 9 – NEGLIGENCE
### PLAINTIFF v. DEFENDANTS CHEVRON U.S.A., INC.

213.    Plaintiff incorporates in this Count by reference paragraphs 1 through 196 of this Complaint.

214.    As a direct and proximate result of the negligence of Defendants and those with whom was acting in concert, Plaintiff Lloyd Parsons developed Parkinson's disease; has suffered severe and permanent physical pain, mental anguish, and disability, and will continue to do so for the remainder of his life; has suffered the loss of a normal life and will continue to do so for the remainder of his life; has lost income that he otherwise would have earned and will continue to do so for the remainder of his life; and has incurred reasonable expenses for necessary medical treatment and will continue to do so for the remainder of his life.

### COUNT 10 – PUBLIC NUISANCE
### PLAINTIFF v. DEFENDANTS CHEVRON U.S.A., INC.

215.    Plaintiff incorporates in this Count by reference paragraphs 1 through 196 of this Complaint.

216.    As a direct and proximate result of the public nuisance created by Defendants and those with whom they were acting in concert, Plaintiff Lloyd Parsons developed Parkinson's disease; has suffered severe and permanent physical pain, mental anguish, and disability, and will continue to do so for the remainder of his life; has suffered the loss of a normal life and will continue to do so for the remainder of his life; has lost income that he otherwise would have earned and will continue to do so forthe remainder of his life; and has incurred reasonable expenses for necessary medical treatment and will continue to do so for the remainder of his life.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

## COUNT 11 – OREGON UNLAWFUL TRADE PRACTICES ACT & CALIFORNIA CONSUMER LEGAL REMEDIES ACT
## PLAINTIFF v. DEFENDANTS CHEVRON U.S.A., INC.

217. Plaintiff Lloyd Parsons incorporates in this Count by reference paragraphs 1 through 196 of this Complaint.

218. As a direct and proximate result of the violations of the Oregon Unlawful Trade Practices Act and the California Consumer Legal Remedies Act by Defendants and those with whom they were acting in concert, Plaintiff Lloyd Parsons developed Parkinson's disease; has suffered severe and permanent physical pain, mental anguish, and disability, and will continue to do so for the remainder of his life; has suffered the loss of a normal life and will continue to do so for the remainder of his life; has lost income that he otherwise would have earned and will continue to do so for the remainder of his life; and has incurred reasonable expenses for necessary medical treatment and will continue to do so for the remainder of his life.

## COUNT 12 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## PLAINTIFF v. DEFENDANTS CHEVRON U.S.A., INC.

219. Plaintiff incorporates in this Count by reference paragraphs 1 through 196 of this Complaint.

220. As a direct and proximate result of the breaches of the implied warranty of merchantability by Defendants and those with whom they were acting in concert, Plaintiff Lloyd Parsons developed Parkinson's disease; has suffered severe and permanent physical pain, mental anguish, and disability, and will continue to do so for the remainder of his life; has suffered the loss of a normal life and will continue to do so for the remainder of his life; has lost income that he otherwise would have earned and will continue to do so for the remainder of his life; and has incurred reasonable expenses for necessary medical treatment and will continue to do so for the remainder of his life.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

**VIII.    Plaintiff's prayer for relief**

221.    Plaintiff Lloyd Parsons prays that this Court enter judgment in his favor and against Defendants SYNGENTA CROP PROTECTION LLC, SYNGENTA AG, and CHEVRON U.S.A., INC., jointly and severally for compensatory damages in an amount greater than $75,000.00 plus costs of suit, severally as to each Defendants for punitive damages in an amount sufficient to punish it and encourage it and others from similar conduct, for reasonable attorney's fees, and for such further relief as is just and appropriate in the circumstances.


DATED: April 30, 2021                                      PANISH SHEA & BOYLE LLP

                                                          By: _____
                                                          Peter L. Kaufman

                                                          Robert J. Mongeluzzi*
                                                          Lawrence R. Cohan*
                                                          Jeffrey P. Goodman*
                                                          Joshua C. Cohan*
                                                          Samuel B. Dordick*
                                                          **SALTZ MONGELUZZI &**
                                                          **BENDESKY P.C.**
                                                          One Liberty Place
                                                          1650 Market Street, 52nd Floor
                                                          Philadelphia, Pennsylvania  19103
                                                          Tel: (215) 496-8282
                                                          rmongeluzzi@smbb.com
                                                          lcohan@smbb.com
                                                          jgoodman@smbb.com
                                                          jcohan@smbb.com
                                                          sdordick@smbb.com

                                                          Mark A. DiCello*
                                                          Mark M. Abramowitz*
                                                          **DiCELLO LEVITT GUTZLER LLC**
                                                          7556 Mentor Avenue
                                                          Mentor, Ohio 44060
                                                          Tel: (440) 953-8888
                                                          madicello@dicellolevitt.com
                                                          mabramowitz@dicellolevitt.com

                                                          Adam J. Levitt*
                                                          Amy E. Keller*

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California  90025
310.477.1700 phone • 310.477.1699 fax

1

**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602

2

Tel: (312) 214-7900
alevitt@dicellolevitt.com

3

akeller@dicellolevitt.com

4

C. Calvin Warriner III*

5

Katherine A. Kiziah*
**SEARCY DENNEY SCAROLA**

6

**BARNHART & SHIPLEY, PA**
2139 Palm Beach Lakes Blvd.

7

West Palm Beach, Florida 33409
ccw@searcylaw.com

8

kkiziah@searcylaw.com

9

***Counsel for Plaintiff***

*Applications for admission *pro hac vice* to be filed

10

11

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

**DEMAND FOR JURY TRIAL**

    Plaintiff hereby demands a trial by jury as to all causes of action.

DATED: April 30, 2021                 PANISH SHEA & BOYLE LLP

By: _____
Peter L. Kaufman

COMPLAINT